

U.S. Department of Justice

United States Attorney
Eastern District of New York

RMP:PP/AA
F. #2023R00676

271 Cadman Plaza East
Brooklyn, New York 11201

June 25, 2025

By ECF and E-mail

The Honorable Carol B. Amon
United States District Judge
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Alain Bibliowicz Mitrani
Criminal Docket No. 25-39 (CBA)

Dear Judge Amon:

The government respectfully submits this letter in opposition to the defendant Alain Bibliowicz Mitrani's motion to modify the stipulated and court-ordered Protective Order in this case. *See* Motion ("Mot."), ECF No. 49; Protective Order, ECF No. 13. As described more fully below, the Protective Order requires the defendant to review certain discovery designated as sensitive—including discovery that could identify cooperating witnesses and confidential sources—in the presence of his counsel. Despite previously agreeing to this framework, the defense now seeks to: (1) modify the Protective Order so that the defendant can review sensitive discovery unsupervised at home; and (2) challenge the sensitive designation of his co-conspirators' electronic devices.

The Motion should be denied. This case involves evidence that could identify overseas witnesses who may be called to testify against the defendant, and implicates transnational criminal organizations, including drug cartels. Such organizations can and do use violence and intimidation to interfere with criminal prosecutions. The defendant offers no more than a complaint about inconvenience to justify his request. The government's compelling interests in protecting witness safety, third-party privacy, and the integrity of its investigation outweigh any claimed inconvenience. Nor has the defendant established an extraordinary reason to modify the Protective Order.

I. Background

    A. Indictment and Offense Conduct

On January 30, 2025, a grand jury sitting in the Eastern District of New York returned a three-count indictment charging the defendant with money laundering conspiracy, in

violation of 18 U.S.C. § 1956(h), and conspiracy to operate an unlicensed money transmitting business, in violation of 18 U.S.C. §§ 371 and 1960. *See* Indictment, ECF No. 1. From approximately 2020 to 2024, the defendant was an owner and leader of a criminal organization that laundered $300 million, including proceeds belonging to transnational criminal organizations, such as the Sinaloa Cartel. *See id*. ¶¶ 1-2.

### B. Discovery and Protective Order

The government has produced extensive discovery materials, including over 70 grand jury subpoena returns (many from financial institutions), devices and accounts from the defendant and his co-conspirators, and other documents. In light of the volume of discovery and its sensitive nature, the parties jointly agreed to—and the Court entered—the Protective Order, prior to the production of discovery. *See* Protective Order dated March 6, 2025, ECF No. 13.

The Protective Order limits the dissemination of discovery. It provides that materials designated by the government as "Sensitive Discovery Material" may be viewed by the defendant only in the presence of defense counsel or staff. *See* Protective Order ¶ 6. Material designated by the government as "Sensitive Discovery Material – Attorneys Eyes Only" may only be viewed by counsel. *See id*. ¶¶ 9-10. The Protective Order defines Sensitive Discovery Material as containing:

> information that could identify any cooperating or confidential witnesses or sources; identifying information for any potential witness; sensitive information of a witness; information that could implicate the safety of others; information that could impede an ongoing law enforcement investigation; and/or any other information that the government upon good-faith belief deems in need of heightened protection under this Protective Order.

*Id*. ¶ 13.

To date, the government has complied with and exceeded its Rule 16 obligations, producing large volumes of material, including entire electronic devices of third parties. The government has also sparingly designated documents as sensitive. Of the approximately 255 subpoena returns or other categories of records produced, only 53 are marked as sensitive discovery material, and only one document was marked as attorneys' eyes only.

### C. To Accommodate the Defense, the Government Reduced the Number of Sensitive Designations

On May 16, 2025, defense counsel wrote to the government requesting that the sensitive designation be removed from 48 subpoena returns or other categories of documents. In a good faith effort to minimize disputes and assist the defense, the government carefully analyzed the request and, on May 28, 2025, removed the sensitive designation from 30 subpoena returns or other categories of documents. The government declined to do so for the remainder, which involved full electronic devices of co-conspirators or personal financial or other sensitive data of third parties.

II.  Applicable Law

Federal Rule of Criminal Procedure 16(d) permits a district court to "for good cause" to "deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Fed. R. Crim. P. 16(d)(1); *see also In re Terrorist Bombings of U.S. Embassies in E. Africa*, 552 F.3d 93, 122 (2d Cir. 2008) (noting that Rule 16(d) grants district courts the discretion to establish conditions "under which the defense may obtain access to discoverable information").

The Second Circuit has repeatedly affirmed protective orders restricting access to witness identities, ongoing investigations, or law enforcement techniques. *See United States v. Guzman Loera*, 24 F.4th 144, 154 (2d Cir. 2022) (affirming protective order that involved "information that could lead to the identification of potential witnesses, information related to ongoing investigations, and information related to sensitive law enforcement techniques."); *United States v. Moore*, 322 F. App'x 78, 83 (2d Cir. 2009) (affirming protective order that "prevent[ed] a defendant's unsupervised possession" of discovery).

Courts have also issued protective orders that safeguard a third-party's privacy interests. *See, e.g.*, *United States v. White*, No. 24-CR-300 (DEH), 2024 WL 2801987, at *1 (S.D.N.Y. May 31, 2024) (finding good cause to designate third-party records as "disclosure materials" and thus subjecting them to various restrictions because the information included "sensitive personal information – such as the names, addresses, phone numbers, and billing information – belonging to individuals other than the defendant"); *United States v. Gendron*, No. 22-CR-109, 2023 WL 4530591, at *5 (W.D.N.Y. Jul. 13, 2023) (finding good cause for the issuance of a protective order that restricted defendant's possession of certain information including law enforcement sensitive materials and sensitive personal information, reasoning that it would allow for prompt production and protection of sensitive information); *United States v. Savedoff*, No. 16-CR-41G, 2017 WL 2305751, at *3 (W.D.N.Y. May 25, 2017) (ordering that a hard drive containing a third-party's personal and financial information, such as tax returns and email messages, would be restricted to attorneys eyes only).

In order to modify a protective order, a litigant must meet a higher standard. Litigants must show "improvidence in the grant of the protective order or some extraordinary circumstance or compelling need." *Gendron*, 2023 WL 4530591, at *6 (quoting *S.E.C. v. TheStreet.Com*, 273 F.3d 222, 229 (2d Cir. 2001)).

III.  Argument

The Motion should be denied for several reasons.

First, the defense previously agreed to the Protective Order and does not cite anything other than minor inconvenience to modify it. The Protective Order plainly identifies which categories of documents would be deemed sensitive—including records that could identify witnesses—and the procedures for the handling of those documents. Protective Order ¶¶ 6, 13. This agreement facilitated early and broad discovery, including access to entire devices of co-conspirators—to which the defense would ordinarily not be entitled under Rule 16. Now, the defense wants to renege on the terms to which it agreed (and the Court endorsed), simply so the defendant does not have to drive to his counsel's office to review a particularly sensitive subset of discovery. The defendant's minor inconvenience of "schedule[ing] time with counsel's office" and "travel[ing] to the office" (Mot. at 4) does not establish good cause, much less "extraordinary circumstance or compelling need" required to modify the Protective Order. *Gendron*, 2023 WL 4530591, at *6. Nor would it be appropriate for the Court to now modify a protective order upon which the parties have reasonably relied. *See TheStreet.Com*, 273 F.3d at 230 (finding it "presumptively unfair for courts to modify protective orders" where the order was "the only reason the litigants had been afforded access to certain documents").

Second, the defendant wrongly claims that the Protective Order "limits and controls" his "ability to present a defense," Mot. 3, and inaccurately states that the sensitive designation covers "nearly all the discovery." Mot. at 1. The Protective Order restricts the defendant's unsupervised home access to about 20 percent of the discovery materials. The sensitive materials include full electronic devices of co-conspirators and potential government witnesses, including individuals located overseas, as well as sensitive personal or financial information of third parties, such as social security numbers, names, addresses, and other personal identifying information. Because these records "could identify any cooperating or confidential witnesses or sources," "implicate the safety of others," or contain "sensitive information of a witness," Protective Order ¶ 13, they are properly designated as sensitive under the plain terms of the Protective Order—and consistent with the practice in this Circuit. *See, e.g.*, *White*, 2024 WL 2801987, at *1; *Savedoff*, 2017 WL 2305751, at *3.[1]

Finally, the government and the Court have compelling interests in protecting witness safety, third-party privacy, and the integrity of an ongoing government investigation. These issues are especially important in this case, which involves cooperating witnesses, witnesses in foreign countries, and transactions associated with foreign cartels and transnational criminal organizations. *See Guzman Loera*, 24 F.4th at 154 (affirming protective order in case involving the Sinaloa Cartel); *Moore*, 322 F. App'x at 83. Concerns of violence are hardly hypothetical or paranoid: an overseas co-conspirator in this case reported being threatened and assaulted over a money laundering transaction. Even if the defendant himself is not violent, he

---

[1] Indeed, the defense concedes that the co-conspirator electronic devices could reveal the identity of a government witness, noting that the phones show "pictures, chats, emails, and voice notes" and thus "the identity of the owners." *See* Mot. at 3. Accordingly, the co-conspirator devices are appropriately designated as sensitive. *See* Protective Order ¶ 13.

4

worked with cartel-associated persons abroad who likely are. The Court therefore has ample justification to restrict the defendant's unsupervised access to sensitive materials.

IV. <u>Conclusion</u>

For the reasons set forth above, the defendant's Motion should be denied.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:    /s/ Adam Amir
Adam Amir
Philip Pilmar
Assistant U.S. Attorney
(718) 254-6116/6106

cc: Clerk of Court (CBA) (By ECF)
    Counsel of Record (By ECF)